■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFRED PENDERGRAFT, Appellant.—Judgment, Supreme Court, New York County, rendered October 7, 1974, convicting defendant of the crime of possession of a weapon as a felony, unanimously reversed, on the law and in the interest of justice, and a new trial directed. An off-duty police officer, while driving in the vicinity of First Avenue and 105 Street, heard two gunshots. He thereupon exited from his car, drew his gun and shield and proceeded in the direction from which the sounds apparently emanated. The officer noticed a small crowd and from a distance of about five feet saw two men apparently engaged in a struggle. He noticed one of the men—later identified as the defendant, throw a gun to the ground. The officer, while approaching the men shouted "Police, freeze", but the two men continued struggling (the other man apparently still being in possession of a knife). The officer separated the two men, at which time they each fell to the ground. An

unidentified bystander picked up the gun—which as already mentioned, defendant had allegedly discarded—and handed it to the officer. About 20 minutes later, several radio cars arrived at the scene and the officer told the newly arrived policemen that he recovered a gun. In the meantime, defendant, who had received several wounds as a result of the fight, was taken to the Metropolitan Hospital. The officer thereupon went to the emergency room of the hospital—other officers already being present. While defendant was on a stretcher and apparently being taken into the operating room, the officer, without giving *Miranda* warnings, asked defendant "How many times * * * he fire[d] the gun?" The defendant responded "Two or three times because I had to." Prior to trial the defendant moved to suppress the above statement urging that he was in custody at the time the statement was made and accordingly, was entitled to *Miranda* warnings. We conclude that the motion to suppress should have been granted. Considering the totality of circumstances, it is apparent that defendant was in custody for the purposes of *Miranda* warnings (see *People v Paulin,* 25 NY2d 445). Indeed, in view of the officer's first-hand knowledge of the events, it is clear that but for defendant's hospitalization the officer would not have permitted defendant to leave the scene a free man. The officer had partially observed a fight in which both men were armed with deadly weapons. And, upon approaching the two men the officer observed defendant discard a gun—which gun the officer thereafter recovered. Moreover, the officer knew that both men had been seriously injured. Furthermore, it is clear that defendant could reasonably conclude that he was in custody at the time he was questioned. Immediately prior to defendant's falling to the ground, an officer identifying himself as such, had intervened in the fight. Then, when the defendant was taken to the hospital he found himself in a room surrounded by police and the officer who had previously intervened in the fight immediately questioned defendant concerning the fight. And, the officer's question itself indicated that the officer knew defendant had fired the gun for the officer asked "How many times * * * he fire[d] the gun?" Accordingly, we are of the belief that this is a case where "the questioning [took] place under circumstances which [were] likely to affect substantially the individual's 'will to resist and compel him to speak where he would not otherwise do so freely' " *(People v Rodney P.,* 21 NY2d 1, 11; see *People v Shivers,* 21 NY2d 118). Moreover, while there was no request to charge justification or temporary, innocent possession as a defense, under the circumstances, such charge should have been given *(People v Messado,* 49 AD2d). Under settled law a conviction for possession of a weapon may not stand if the possession was incidental to a lawful act such as disarming a wrongful possessor *(People v Persce,* 204 NY 397, 402) or in self defense (see *People v Steele,* 26 NY2d 526). Under the proof developed at the trial, there was a factual issue for the jury's determination as to whether the defendant's possession of the gun was innocent and temporary—despite defendant's claim that he never had sufficient control over the gun to fire it (see *People v Messado, supra).* Concur—Stevens, P. J., Kupferman, Murphy, Tilzer and Nunez, JJ.