OPINION OF THE COURT
Ethan Greenberg, J.
Decision
Shortly before 2:00 a.m. on December 22, 2001, defendant Leonides Ramos and his neighbor Juan DeLa Rosa quarreled *565 in the street just outside their apartment building at 970 Anderson Avenue. Mr. DeLa Rosa was angry. He believed that defendant Ramos had glued the lock to the front door to his apartment shut. DeLa Rosa held a screwdriver in his hand; a few minutes earlier DeLa Rosa had used the screwdriver to try to pry open the door to his home. Defendant Ramos picked up a long metal pipe that was lying in the street. Ramos then hit DeLa Rosa with the pipe, once in the arm and twice in the head. DeLa Rosa suffered head wounds that required 12 stitches.
At trial, defendant Ramos claimed that he acted in self-defense because he believed DeLa Rosa was trying to stab him with the screwdriver. The People and DeLa Rosa asserted that DeLa Rosa never made any threatening gesture with the screwdriver, and that defendant Ramos had acted in a rage rather than in self-defense.
Defendant was charged with the crimes of assault in the third degree (in violation of Penal Law § 120.00 [1]) and criminal possession of a weapon in the fourth degree (in violation of Penal Law § 265.01 [2]). The theory of the weapons charge was that defendant possessed a dangerous instrument with the intent to use it unlawfully against another person, in that defendant used the metal pipe to strike Mr. DeLa Rosa.
Prior to the submission of the case to the jury, defendant asked the court to instruct the jury that defendant’s claim of self-defense or justification was a defense to both the assault and the weapons charge. This request seemed to be a fair and logical one. But it also seemed to run afoul of the rule of People v Pons (68 NY2d 264 [1986] [and a long line of subsequent cases]) which holds that justification is not a defense to a charge of weapons possession.
As detailed below, the application of the Pons rule to this case could lead to considerable jury confusion and would be unfair to the defendant. Accordingly, the court — with the acquiescence of the parties and acting as a matter of discretion— dismissed the weapons charge pursuant to CPL 300.40 (3) (a). The facts of this case further lead the court to suggest that the rule of Pons should be revisited and, at the very least, refined. More specifically, the Pons rule should at a minimum be modified so that justification will be regarded as a defense to a weapons charge, provided that: (a) the weapon is not a per se weapon, and (b) defendant’s evidence (if accepted as true) shows that defendant first picked up (or otherwise obtained) the weapon during the course of the incident at issue solely for the purpose of self-defense.
*566 Analysis
The Pons Rule
In People v Pons (68 NY2d 264, 267 [1986]), the Court of Appeals elaborated upon its earlier decision in People v Almodovar (62 NY2d 126 [1984]) and set forth the clear black-letter rule that “because possession of a weapon does not involve the use of physical force * * * there are no circumstances when justification (Penal Law § 35.15) can be a defense to the crime of criminal possession of a weapon.”[1]
The Pons Court went even further. The defendant there suggested that in a case where the charge was possession of a weapon with the intent to use the same unlawfully against another person, justification could at least serve as a partial defense that, if established, would reduce the charge to mere possession. But the Pons Court rejected that suggestion too. It attempted to explain this result by stating:
“[I]ntent to use and use of force are not the same, and justification, by the very words of the statute (Penal Law § 35.15), is limited to the latter. Second, it does not follow that because defendant was justified in the actual shooting of the weapon under the particular circumstances existing at that moment, he lacked the intent to use the weapon unlawfully during the continuum of time that he possessed it prior to the shooting.” (68 NY2d at 267-268.)[2]
The rationale for the Pons rule is perhaps best set forth by quoting directly from the opinion in Pons rather than by attempting any paraphrase. That is so because the reasoning *567 and the result in Pons are somewhat counterintuitive. After all, in most cases where a defendant is charged with both an assault (or homicide) and with possession of a weapon with intent to use the same unlawfully against another, the intent referred to in the weapons charge is defendant’s intent during the alleged assault, rather than to his intent during some vague “continuum of time” prior to the assault.
Perhaps the best explanation that can be made for the reasoning behind the Pons rule can be found in Davis v Strack, where the Second Circuit stated:
“A defendant may use his illegally possessed gun only in a manner that falls within the protection of the justification statute and nonetheless be guilty of criminal possession, second degree. That is because, regardless that his actual, ultimate use of the gun might not have been unlawful (because it was justified under § 35.15), he may have harbored intentions to use the gun in other circumstances that would have been unlawful.” (270 F3d 111, 134 [2d Cir 2001].)
In other words, the Pons rule prevents a defendant who as a general matter carries an illegal weapon around for possible use in nefarious and unlawful activities from somehow converting his weapon into a legal one merely because in a particular case he uses that weapon in self-defense. Or, to state the same idea in more elevated and concise language, “A lawful use of a weapon does not necessarily legitimate its prior possession.” (State v Harmon, 104 NJ 189, 212 n 10, 515 A2d 1047, 1059 n 10 [1986].)
Whatever its merits or drawbacks, the Pons rule is now firmly established as New York law. (See e.g. People v Flores, 219 AD2d 40 [1st Dept 1996]; People v LoCurto, 216 AD2d 167, 167 [1st Dept 1995] [“(I)t is inappropriate to submit a justification defense in connection with a possessory offense”]; People v Perez, 125 AD2d 236, 238 [1st Dept 1986] [“Justification, based on self-defense * * * pertains only to crimes involving use of physical force and is not applicable to a crime based on possession of a weapon”]; People v Thomas, 232 AD2d 667 [2d Dept 1996], lv denied 89 NY2d 947 [1997] [“Justification based on self-defense pertains only to the use of physical force and does not apply to a crime based on the possession of a weapon, even though an element of the crime is that the defendant possessed the weapon with the intent to use it unlawfully against another”]; People v Cosby, 200 AD2d 682 [2d Dept], lv denied 83 *568 NY2d 851 [1994]; People v Chatman, 122 AD2d 148 [2d Dept 1986].)
The Present Case
Defendant Ramos is charged with both assault and criminal possession of a weapon in the fourth degree. The theory of the weapons charge is that defendant possessed a metal pipe with intent to use it unlawfully against Mr. DeLa Rosa in that defendant hit Mr. DeLa Rosa with the pipe.
Notably, according to both the People’s and the defendant’s evidence, the defendant was not carrying the pipe around prior to the altercation with DeLa Rosa. Rather, both sides agree that defendant Ramos first picked the pipe up off the street during his argument with Mr. DeLa Rosa and then immediately hit DeLa Rosa with the pipe. The People contend that this was unprovoked conduct; defendant claims that he acted in self-defense, because DeLa Rosa was about to stab him with a screwdriver. But both sides agree that defendant first obtained possession of the weapon at issue during the alleged assault and not during some prior “continuum of time.” It is also noteworthy that a metal pipe is not a per se weapon— such as a gun or a gravity knife — the mere possession of which without more is a crime. Rather, the People’s theory in this case is that the pipe constituted a dangerous instrument (Penal Law § 265.01 [2]; § 10.00 [13]) because it was used to hit Mr. DeLa Rosa in the head. Thus this is not a case where the defendant is arguing that he should avoid all criminal liability for toting an illegal weapon around merely because he may have used the weapon in lawful self-defense on the particular day in question.
Defendant Ramos called a witness who testified that he saw DeLa Rosa try to stab Ramos with the screwdriver, and that defendant Ramos then picked up the pipe and struck back in self-defense. This testimony clearly raised the defense of justification. Accordingly, it is plain that the court was required to instruct the jury that justification is a defense to the assault charge and then to fully charge the jury on the law of justification. (See People v Cox, 92 NY2d 1002 [1998]; People v Padgett, 60 NY2d 142 [1983].)
The more difficult question was whether and how the court should explain to the jury the relationship between the weapons charge and defendant’s assertion of justification. As a purely logical matter, it would seem that the justification charge should apply to the weapons charge as well as to the *569 assault charge. If defendant were innocent of assault because he acted in lawful self-defense, how could he at the same time be guilty of intending to use the pipe unlawfully against Mr. DeLa Rosa? In the particular circumstances of this case— where the weapon was not a per se weapon, and where defendant’s possession began and ended at the time of the alleged assault — it would seem that the charges of assault and weapon possession should stand or fall together. Either defendant acted in lawful self-defense and was innocent of both charges, or he did not and was guilty of both. Moreover, it would appear that the only proper and logical way for the jury to evaluate the question whether defendant’s intent to use the pipe to hit DeLa Rosa was lawful or not was by reference to the law of justification.
However, as presently formulated, the Pons rule — which flatly holds that “there are no circumstances when justification * * * can be a defense to the crime of criminal possession of a weapon” (68 NY2d at 267 [emphasis added]) — appears to bar this court from instructing the jury to consider justification as a defense to the weapons charge.
It is difficult, if not impossible, to predict how the jury would react if it were instructed on justification solely as a defense to the assault charge and not to the weapons charge. Would the jurors simply assume based on their common sense that self-defense must be a valid defense to both charges? Would they instead believe that they were required to convict defendant on the weapons charge even if they were convinced that defendant’s only purpose in picking up and using the pipe was lawful self-defense? Would some jurors adopt one view and some the other? Would they simply be hopelessly confused?
Thus the application of the Pons rule in its current formulation to this case could have been unfair to the defendant and would almost certainly have been confusing to the jury. Indeed, the Second Circuit in its recent opinion in Davis v Strack (supra) pointed out essentially the same difficulties created by the Pons rule when it stated (using appropriately circumspect language):
“Without an explanation from the court in the course of its instructions on how the use of the gun against another might be justified (and thus not ‘unlawful’), the jury lacked information that would have explained how an intention to use the gun against Bubblegum [the victim] in certain circumstances might be an ‘intent to use the same unlaw *570 fully against another.’ ” (270 F3d at 134.)
Similarly, if the jury here were to consider the weapons charge, then the jury needed an explanation from the court as to how the defendant’s intent to use the pipe could be lawful if defendant intended to act in justifiable self-defense.
CPL 300.40 (3) (a)
Fortunately, CPL 300.40 (3) (a) offers a way out of these difficulties. It provides in substance that, outside of a murder prosecution, where an indictment (or, in this case, a misdemeanor information) contains multiple noninclusory concurrent counts, the court may in its discretion submit one, or more, or all such counts. Stating the same proposition somewhat differently, this means that in such a case the court may in its discretion elect not to submit some counts to the jury even though the People have presented a legally sufficient case. (People v Pozo, 261 AD2d 144 [1st Dept], lv denied 94 NY2d 828 [1999].)
The statute thus confers upon a court the power to substantially reshape the charges that will be presented to the jury for decision. This power should be used sparingly because it is ordinarily the province of the district attorney and (in a felony case) the grand jury to decide what charges should be brought against the accused. Nevertheless, in an appropriate case the court can and should use this power to dismiss charges in order to simplify and clarify the issues the jury must decide. (See e.g. People v Pagano, 195 AD2d 487 [2d Dept 1993], lv denied 82 NY2d 757 [1994].)
In view of the difficulties created by the Pons rule discussed above, the submission to the jury in this case of the weapons charge would likely confuse the jury and could significantly prejudice the defendant.
On the other hand, removing the weapons charge from the jury’s consideration would simplify the issues for the jury’s resolution by eliminating all the confusion created by the Pons rule. At the same time, removing the weapons charge would not unfairly prejudice the People. The assault and weapons counts are concurrent because they grow out of the very same incident. Thus defendant could not receive any greater punishment if convicted of both crimes than if he were convicted of the assault charge alone. Moreover — as the People candidly conceded after full consideration — under the particular facts of this case, there is no logical scenario whereby the defendant could be acquitted of the assault charge and yet convicted of *571 the weapons charge. He either acted in lawful self-defense with respect to both charges, or he was guilty of both.
Accordingly — with the acquiescence of both sides — the court dismissed the weapons charge pursuant to CPL 300.40 (3) (a).
Modification of the Pons Rule
The court further recommends that either the Legislature or, when an appropriate case arises, a higher court should revisit the Pons rule in light of the difficulties with that rule illustrated herein and in light of the measured criticism of that rule set forth in Davis v Strack (supra). In particular, this court suggests that the Pons rule should at a minimum be modified so that justification will be regarded as a defense to a weapons charge where, as here: (a) the weapon is not a per se weapon, and (b) the defendant’s evidence (if accepted as true) shows that defendant first picked up (or otherwise obtained) the weapon during the very same incident that is the basis for the assault charge, and did so solely for the purpose of self-defense. (See State v Harmon, 104 NJ 189, 208-209, 516 A2d 1047, 1057 [1986] [self-defense will not excuse possession of a weapon, except in “those rare and momentary circumstances where an individual arms himself spontaneously to meet an immediate danger”].)[3]

. Prior to Pons and Almodovar, it appears that justification was regarded as a potential defense to a weapons charge. For example, in People v Watts (57 NY2d 299 [1982]) the opinion of the Court of Appeals appears to assume that if a justification defense had been made out in that case, then it would have applied to both the charge of assault in the second degree and the charge of criminal possession of a weapon in the fourth degree. (See also People v Morris, 109 AD2d 413, 417 [4th Dept 1985], appeal dismissed 86 NY2d 799 [1986] [trial court should have charged jury on justification as a defense to charge of possession of weapon with intent to use unlawfully (Penal Law § 265.03)]; People v Lewis, 116 AD2d 16 [1st Dept 1986] [Lewis and Morris were expressly disapproved in Pons]; see also People v Hunter, 61 AD2d 990 [2d Dept 1978] [reversible error for trial court to refuse to instruct jury on justification as defense to weapons charge].)

. The tension between modern statutes prohibiting possession of a weapon and the ancient privilege of self-defense is examined at length by William Meyerhofer in Statutory Restrictions on Weapons Possession: Must the Right to Self-Defense Fall Victim? (1996 Ann Surv Am L 219).

. (See also United States v Panter, 688 F2d 268 [5th Cir 1982].) In Panter, the Fifth Circuit recognized a common-law based self-defense exception to a federal statute prohibiting a convicted felon from possessing a firearm. The exception applies only where defendant, reacting out of reasonable fear for his life or safety, arms himself during the actual course of a physical conflict (that he did not provoke) for the purpose of defending himself. The Panter court explained that in the absence of such an exception a defendant would be caught between “a rock and a hard place — death being the rock and a federal penitentiary the hard place.” (688 F2d at 271.)